IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GREAT MIDWEST INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>MECO BUILDERS, INC, McCRANEY GENERAL PARTNERSHIP, LLC, McCRANEY ENTERPRISES FAMILY LIMITED PARTNERSHIP, CARMAC, LLC, CAROLYN M. McCRANEY, and JAMES B. McCRANEY,<br><br>    Defendants. | Case No. _____ |

# COMPLAINT

Great Midwest Insurance Company files this Complaint against Meco Builders, Inc., McCraney General Partnership, McCraney Enterprises Family Limited Partnership, Carmac, LLC, Carolyn M. McCraney, and James B. McCraney and shows the Court the following:

### PARTIES, JURISDICTION AND VENUE

1. Great Midwest Insurance Company is a corporation formed under the laws of the State of Texas, with its principal place of business in Houston, Texas.

1

2. Meco Builders, Inc. is a corporation organized under the laws of the State of Georgia, with its principal place of business in Chatsworth, Georgia.

3. Upon information and belief, McCraney General Partnership, LLC is a Georgia LLC with all members domiciled in Georgia.

4. Upon information and belief, McCraney Enterprises Family Limited Partnership is a Georgia domestic limited partnership with all partners domiciled in Georgia.

5. Upon information and belief, Carmac, LLC is a Georgia LLC with all members domiciled in Georgia.

6. Carolyn M. McCraney is an individual domiciled in the State of Georgia.

7. James B. McCraney is an individual domiciled in the State of Georgia.

8. This matter concerns an amount in controversy greater than $75,000.00, exclusive of interest and costs.

9. There is complete diversity of state citizenship between plaintiff and the defendants.

10. This Court has jurisdiction over this matter under 28 USC § 1332(a), and venue is proper in this District under 28 U.S.C. § 1391(a).

## FACTS COMMON TO ALL COUNTS

11. This action can easily be summarized. As set out below Meco Builders, Inc. entered a construction contract, Plaintiff Great Midwest Insurance Company provided construction bonds for Meco Builders, Inc. and the Defendants agreed to indemnify Plaintiff for any losses on the bonds. Meco Builders, Inc. was defaulted and terminated, and Plaintiff incurred significant losses. The Defendants have breached their indemnity contract, failed to indemnify Plaintiff and Plaintiff is entitled to reimbursement.

12. Meco Builders, Inc., wanted construction bonds and it along with McCraney General Partnership, McCraney Enterprises Family Limited Partnership, Carmac, LLC, Carolyn M. McCraney, and James B. McCraney (collectively "Indemnitors") executed a General Agreement of Indemnity ("Indemnity Agreement") in favor of Great Midwest Insurance Company ("Surety") for any bonds issued. A true and accurate copy of the Indemnity Agreement is attached hereto as Exhibit A.

13. The Indemnity Agreement was executed by Indemnitors "as inducement to the Surety and in consideration of the Surety's execution of one or more Bonds."

14. Meco Builders, Inc. ("Contractor" or "Principal") executed a construction contract ("Construction Contract") with Walker County Board of

Education (as "Owner" or "Obligee") for construction of a project known as New Athletic Fields for Chattanooga Valley Middle School (the "Project").

15. Surety executed a Performance Bond and Payment Bond (the "Bonds") in favor of Obligee on behalf of Principal for work on the Project.

16. The Obligee declared Meco in default of the construction contract and demanded that Surety respond and perform under the Bonds.

17. Seeking to remedy the default, the Surety arranged to work to proceed with Principal returning to the Project. Surety and Principal entered into a Completion Agreement for Principal to perform work on the Project and complete obligations under the Construction Contract.

18. The Indemnitors also executed the Completion Agreement in which they ratified the Indemnity Agreement and agreed to Principal's obligations under the Completion Agreement.

19. The Principal then returned to work on the Project.

20. The Obligee declared Surety in default of work on the Project – work being done by Principal.

21. Obligee made substantial and repeated demands against Surety under the Bonds.

22. Surety also received other claims and demands on the Bonds.

23. Surety has paid claims, incurred losses, and additional claims and demands have been made against Surety.

24. Under the terms of the Indemnity Agreement the Indemnitors "jointly and severally, covenant, promise and agree to indemnify and hold harmless Surety from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon . . . which Surety may sustain or incur or for which the Surety becomes liable or has reason to believe it may be, or may become liable by reason of or in consequence of the execution and/or delivery by Surety of any Bond(s) on behalf of any Indemnitor…"

25. In addition, the Indemnity Agreement provides that "[i]mmediately upon demand, Indemnitors agree to deposit with surety, as collateral security, (the "Collateral Demand") funds or other collateral of such kind and amount satisfactory to the Surety, equal to (1) the liability of the Surety, if established; (2) any indebtedness, liability, claim asserted, expense, suit or judgment under any Bond (3) the reserve established by the Surety, and any increase thereof; or (4) the amount established by the Surety, in its sole discretion, that represents the exposure for or from any claim asserted against any Bond, whether or not a reserve has been established, for which the Indemnitors may be obligated to indemnify the Surety under the terms of this Agreement.

26. On May 17, 2023, Surety made a Collateral Demand on the Indemnitors in which it demanded under the terms of the Indemnity Agreement that the Indemnitors deposit collateral in the amount of $973,907.89 A copy of the May 17, 2023, Collateral Demand is attached as Exhibit B.

27. Indemnitors did not deposit any collateral in response to the May 17, 2023, Collateral Demand.

28. Surety settled all claims and demands asserted against the Bonds.

 a. Surety and paid the Obligee $775,000.00 to satisfy and release claims under the performance bond.

 b. Surety paid Master Halco, Inc. $30,310.58 under the payment bond.

29. Surety has also incurred expenses as the result of construction consulting fees and attorneys' fees as a result of the claims made on the Bonds and Surety's efforts to recover its losses from the Indemnitors.

30. Surety has incurred losses, expenses, costs, and attorney's fees in an amount to be shown at trial.

31. Indemnitors have failed to indemnify Surety for any losses or expenses or hold Surety harmless from any claims and demands made on the Bonds.

### COUNT I - CONTRACTUAL INDEMNIFICATION

32. Surety restates and reallages the allegations contained in paragraphs

11 through 31 above as if fully set forth herein.

33. Under the terms of the Indemnity Agreement, Indemnitors are liable o Surety for, but not limited to:

    a. all of the liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature that Surety has incurred by reason of or in consequence of the execution of Bonds on behalf of Principal;

    b. all attorneys' fees and all legal expenses, expert fees, and all fees and costs for investigation, accounting and engineering services, that Surety incurs as a result of claims made on the Bonds; and

    c. the costs and/or expenses of Surety in connection with the enforcement of their obligations contained in the Indemnity Agreement, including but not limited to Surety's attorneys' fees (including, in-house counsel), all legal expenses, expert fees, consultant fees and all of Surety's costs of this lawsuit.

34. Surety is entitled to a judgment under the Indemnity Agreement in an amount to be shown for all amounts the Indemnitors are obligated to indemnify Surety, plus interest, attorneys' fees, costs and expenses that Surety has incurred to date and may incur between now and the date of final judgment.

## COUNT II - COMMON LAW INDEMNIFICATION

35. Surety restates and realleges the allegations contained in paragraphs 11 through 31 above as if fully set forth herein.

36. As a matter of law (see O.C.G.A. § 10-7-41), Principal is liable to Surety for all sums paid, with interest thereon, and all legal costs, which Surety has incurred as a result of Principal's default on its bonded obligations.

### COUNT III – ATTORNEY'S FEES

37. Surety restates and realleges the allegations contained in paragraphs 11 through 31 above as if fully set forth herein.

38. The Indemnity Agreement states, in part, "Surety shall have the right to reimbursement of its expenses and attorneys' fees, whether provided by in-house or outside counsel, incurred hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further expenses and reasonable attorneys' fees incurred in such suit."

39. Pursuant to the above-cited provision of the Indemnity Agreement, Surety is entitled to a judgment for all incurred attorneys' fees, in an amount to be shown at trial.

**WHEREFORE**, the Surety, Great Midwest Insurance Company, prays for a judgment in its favor and against Indemnitors as follows:

(a) In an amount for liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest at the

maximum rate allowed by law, that Surety has sustained and continues to sustain as a result of having executed the Bonds and enforcing the Indemnity Agreement, in an amount to be shown more fully at trial or hearing or by motion;

(b)     Judgment for all costs and expenses incurred to enforce the Indemnity Agreement.

(c)     For all other such relief as this Court deems just and proper.

Respectfully submitted this 27th day of June 2024,

| | |
|---|---|
| **Bovis, Kyle, Burch, & Medlin LLC**<br>200 Ashford Center North, Suite 500<br>Atlanta, Georgia 30338-2668<br>770-391-9100<br>770-668-0878 fax | /s/ John V. Burch<br>**John V. Burch**<br>Georgia Bar Number 094900<br>/s/Mark L. Pickett<br>**Mark L. Pickett**<br>Georgia Bar Number 814645<br><br>*Attorneys for Great Midwest Insurance Company* |